UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Fernanda Bravo and Fernando Bravo, Plaintiffs, v. International Bank of Chicago, et al., Defendants. | Case No. 21-cv-6813 Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Fernanda and Fernando Bravo claim that they were wrongfully evicted from their leased property in violation of the Fourth and Fourteenth Amendments and state law. They now sue the allegedly culpable parties—Defendants Village of Melrose Park; two of the Village's inspectors, Carl Capra and Anthony Sabatino; and the International Bank of Chicago under 42 U.S.C. § 1983 and the Illinois Forcible Entry and Detainer Law. Defendants have moved to dismiss. [12]; [13]. For the reasons explained below, the Court grants in part and denies in part the motions to dismiss.

**I. Background**

On December 24, 2019, Plaintiffs Fernanda and Fernando Bravo resided at 110 South 25th, Apt. 15, in Melrose Park, Illinois (the Property). [1] ¶¶ 4, 9. Defendant International Bank of Chicago (IBC) owned the Property as of December 24, 2019. *Id.* ¶ 5. Defendants Carl Capra and Anthony Sabatino work for Defendant Village of

1

Melrose Park (the Village) as code enforcement inspectors. *Id.* ¶¶ 6, 7. Plaintiffs sue Capra and Sabatino in their individual and official capacities. *Id.*

Plaintiffs allege that, as of December 24, 2019, they were lawfully on the Property as "holdover lessees." *Id.* ¶ 9. IBC had tried to dispossess Plaintiffs of their leasehold from August 2019 through December 24, 2019, sending agents to the Property who asked Plaintiffs to leave. *Id.* ¶ 10. Plaintiffs advised IBC they had not received the required notices pursuant to the Illinois Forcible Entry and Detainer Act. *Id.* ¶ 12. Sometime in October 2019, IBC shut off water to the building where the Property was located. *Id.* ¶ 14. And in December, IBC sealed the building, denying Plaintiffs access to it. *Id.* ¶ 16. Plaintiffs, however, "lawfully entered back" onto the Property. *Id.* ¶ 17.

On December 24, 2019, Defendants Sabatino and Capra sealed the building due to "unsafe and unsanitary conditions" and ordered Plaintiffs to "vacate immediately." *Id.* ¶ 18. They posted a notice threatening fines of up to $200.00 per day. *Id.* Police were stationed by the building and told Plaintiffs they would be arrested if they attempted to enter. *Id.* Plaintiffs claim they were given no prior notice of the building closure and had no opportunity to be heard. *Id.* ¶ 19. Plaintiffs assert that, as a result of Defendants' actions, they have been deprived of the right to the use of their property, incurred expenses for alternate living arrangements, and suffered extreme embarrassment, shame, anxiety and mental distress. *Id.* ¶ 24.

Plaintiffs sue all Defendants for violation of their Fourteenth Amendment due process rights and Fourth Amendment rights to be free from unreasonable seizures

under § 1983 (Count I), and sue IBC for violation of the Illinois Forcible Entry and Detainer Act (Count II). *Id.* ¶¶ 25–33. Defendants move to dismiss. [12]; [13].

II. **Legal Standard**

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gociman v. Loyola Univ. of Chi.*, No. 21-1304, --- F.4th ----, 2022 WL 2913751, at *7 (7th Cir. July 25, 2022); *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir. 2021) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

### III. Analysis

The Village, Capra, and Sabatino argue that Plaintiffs fail to plead cognizable Fourth and Fourteenth Amendment claims; that the complaint does not plead a viable conspiracy claim; and that Plaintiffs do not plausibly allege a theory of municipal liability against the Village. [13]. IBC separately moves to dismiss on the basis that it is not a state actor against whom Plaintiffs can impose § 1983 liability and that the Court should relinquish supplemental jurisdiction over the state-law claim in Count II. [12]. The Court addresses each motion in order below.

#### A. Melrose Park Defendants' Motion to Dismiss

##### 1. Fourth Amendment

The Melrose Park Defendants argue that Plaintiffs fail to state a cognizable Fourth Amendment claim because exigent circumstances excused their warrantless seizure of Plaintiffs' property.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Gaetjens v. City of Loves Park*, 4 F.4th 487, 491 (7th Cir. 2021) (quoting U.S. Const. amend. IV), *cert. denied*, 142 S. Ct. 1675 (2022)). At the "core of the privacy protected by the Fourth Amendment is the right to be let alone in one's home." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 550 (7th Cir. 2014). Thus, the warrantless entry and seizure of one's property is *per se* unreasonable, unless "police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Id.* (quoting *United States v. Shrum*, 908 F.3d 1219, 1231 (10th Cir.

4

2018)). Under this exception, "a warrantless entry into a dwelling may be lawful when there is a pressing need for the police to enter but no time for them to secure a warrant." *Sutterfield*, 751 F.3d at 557; *see Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (instructing that "exigent circumstances allow even warrantless intrusions"). Such exigencies might include danger to the occupant of a residence, danger to others, risk that a suspect may escape, or imminent destruction of evidence. *Sutterfield*, 751 F.3d at 557.

Here, however, there "are no facts in the Complaint indicating that there was a compelling need for the officers to act and no time to obtain a warrant." *Miles v. Village of Dolton*, No. 15 CV 5017, 2016 WL 1161293, at *6 (N.D. Ill. Mar. 23, 2016). Moreover, the "facts that establish exigent circumstances are uniquely within the knowledge of the pursuing officers." *Bogan v. City of Chicago*, 644 F.3d 563, 569 (7th Cir. 2011). The Supreme Court thus cautions that exigent circumstances "always requires case-by-case determinations." *Birchfield v. North Dakota*, 579 U.S. 438, 467 (2016).

Notwithstanding, the Melrose Park Defendants argue that code violations constitute such exigent circumstances that justified Capra and Sabatino's warrantless entry and seizure, pointing to Plaintiffs' allegation that their water had been shut off in October 2019. [13] at 4–5; *see* [1] ¶ 14. But if the water shut-off constituted an exigent circumstance, Capra and Sabatino would have entered and sealed the Property immediately. *See Gaetjens*, 4 F.4th at 494 (noting that the exigency exception to the warrant requirement "is to allow *immediate effective* action

5

necessary to protect the safety of occupants, neighbors, and the public at large") (emphasis added) (quoting *Flatford v. City of Monroe*, 17 F.3d 162, 171 (6th Cir. 1994)). Instead, the complaint alleges that Capra and Sabatino did not enter and seal the Property until December 2019, two months after the alleged water shut-off. [1] ¶ 18. Thus, this Court cannot conclude at the pleadings stage that Capra and Sabatino possessed a "compelling need to act and no time to obtain a warrant." *Martinez v. City of Chicago*, 900 F.3d 838, 845 (7th Cir. 2018) (quotation omitted). For this reason, this Court denies the Melrose Park Defendants' motion as to Plaintiffs' Fourth Amendment claim.

### 2. Fourteenth Amendment

The Melrose Park Defendants next challenge Plaintiffs' due process claim, which asserts that the Melrose Park Defendants deprived Plaintiffs of their Property without notice or hearing. [1] ¶¶ 27, 29. Plaintiffs advance only a procedural due process, not a substantive due process, claim. [19] at 1.

The Fourteenth Amendment's due process clause prohibits the State from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. A procedural due process claim under Section 1983 requires Plaintiffs to allege: (1) a deprivation of a protected property interest; and (2) constitutionally deficient process. *Knutson v. Village of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019). Defendants do not contest that Plaintiffs possess a constitutionally protected interest in their home; eviction unquestionably "is a deprivation of property rights to which the procedural due process protections of the Fourteenth Amendment

6

attach." *McNease v. Laldee*, No. 19-CV-7280, 2021 WL 1057295, at *7 (N.D. Ill. Mar. 18, 2021). Rather, Defendants argue that Illinois law provides sufficient procedural protections in the context of the facts of this case.

To determine whether a defendant provided sufficient procedural due process, this Court first determines "whether the claim is based on established state procedures or on random and unauthorized acts by state employees." *Cannici v. Village of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018). Plaintiffs' due process claim falls into the second category. Plaintiffs are not alleging that the Melrose Park Defendants established procedures that violate the due process clause, but rather that they failed to follow proper eviction procedures which require notice and an opportunity to be heard. *See Hansen v. Cannon*, 122 F. App'x 265, 270 (7th Cir. 2004) (finding that "eviction without a court order is a good example of random and unauthorized action") (internal quotation marks omitted); *see also, e.g., Calderone v. City of Chicago*, 979 F.3d 1156, 1165 (7th Cir. 2020) (noting that the plaintiff's due process theory rests on random and unauthorized acts because she does not challenge the established "disciplinary procedures prescribed by municipal law").

When a "state official deprives a person of his property through a random, unauthorized act that departs from state law, the federal due-process guarantee requires only that the state provide an adequate postdeprivation remedy." *Vargas v. Cook Cnty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020); *Cannici*, 885 F.3d at 479 (instructing that "a claim based on random and unauthorized acts by state officials does not have the same predictability, and thus, only requires a meaningful

7

post-deprivation remedy"). Accordingly, to withstand a motion to dismiss a due process claim based on random and unauthorized acts, Plaintiffs must allege that they availed themselves of state post-deprivation remedies, or that the available remedies are inadequate. *See LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010) ("LaBella alleges neither that it availed itself of state post-deprivation remedies, nor that the available remedies are inadequate, as it is required to do. That failure is fatal to its procedural due process claim.").

Plaintiffs have not alleged they lacked an adequate post-deprivation remedy. Nor could they, because they possess an adequate remedy for their alleged wrongful eviction under the Illinois Forcible Entry and Detainer Act—the very claim they bring in Count II against IBC. *See Dix v. Edelman Fin. Servs., LLC*, No. 17 CV 6561, 2018 WL 3922199, at *7 (N.D. Ill. Aug. 14, 2018) (noting that the plaintiff had an "adequate remedy" for his alleged wrongful eviction—the Illinois Forcible Entry and Detainer Act), *aff'd*, 978 F.3d 507 (7th Cir. 2020). Plaintiffs' failure to plead they lacked a post-deprivation remedy dooms their procedural due process claim. This Court dismisses Count I to the extent based on violation of due process.

### 3. Section 1985(3) Conspiracy

The Melrose Park Defendants also move to dismiss Count I to the extent Plaintiffs intend to bring a conspiracy claim under 42 U.S.C. § 1985(3). [13] at 9–10. Section 1985(3) provides a cause of action for victims of a conspiracy to deprive them of the "equal protection of the laws" or "equal privileges and immunities under the laws." *Milchtein v. Milwaukee County*, No. 21-2955, --- F.4d ----, 2022 WL 3040897, at

8

\*9 (7th Cir. Aug. 2, 2022) (quoting *Bowman v. City of Franklin,* 980 F.2d 1104, 1108–09, 1108 n.4 (7th Cir. 1992)). A § 1985(3) plaintiff must plead that a racial or otherwise class-based discriminatory animus motivated the conspiracy. *Id.* at \*9.

Here, the complaint alleges *no* facts suggesting that a conspiracy existed, much less that a conspiracy was motivated by a discriminatory animus. The complaint does not even explicitly allege a violation of § 1985. Plaintiffs do not argue otherwise; in fact, they do not address the Melrose Park Defendants' arguments on § 1985(3). *See generally* [19]. Accordingly, they concede, and the Court finds, that the complaint does not plead a viable § 1985(3) conspiracy claim.

### 4. *Monell* Allegations

The Village next argues that Plaintiffs fail to allege sufficient facts to state a plausible theory of municipal liability under *Monell v. Department of Social Services,* 436 U.S. 668 (1978). [13] at 10–15.

Under *Monell,* a municipality is not vicariously liable for the constitutional torts of the employees; rather, it "may be liable only for 'conduct that is properly attributable to the municipality itself.'" *Milchtein,* 2022 WL 3040897, at \*8 (quoting *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago,* 988 F.3d 978, 986 (7th Cir. 2021)). A municipality faces liability under § 1983 only if a municipal "policy or custom" is the "moving force" behind a constitutional violation. *Id.* A *Monell* claim requires Plaintiffs to plead that: (1) they suffered the deprivation of a constitutional right; and (2) an official custom or policy of defendant caused that deprivation. *First Midwest,* 988 F.3d at 986. Three types of actions can support *Monell* liability: (1) an

9

express policy; (2) a widespread practice that is so well-settled that it constitutes a custom or practice; or (3) a final policymaker caused the constitutional injury. *Id.* While *Monell* claims are not subject to a heightened pleading standard, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), plaintiffs must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom causing the alleged constitutional injury, *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011).

Plaintiffs neither identify an express policy nor assert that an official policymaker caused their constitutional injuries, so the question is whether Plaintiffs have plausibly alleged a widespread practice. They have not. The Seventh Circuit recently reaffirmed that providing "[b]oilerplate allegations of a municipal policy," or pointing to a "few isolated incidents of official action will not suffice to show the existence of such a practice." *Milchtein*, 2022 WL 3040897, at *8 (first quoting *Baxter ex rel. Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994); then citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); and then citing *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002)).

Plaintiffs' allegations do not rise above boilerplate pleading. Rather, Plaintiffs allege, in conclusory fashion, that the Village maintained a policy or custom of "assisting creditors in depriving debtors of leaseholds without court order and without providing an opportunity for the debtor to be heard," and that the Village "failed to adopt clear policies and failed to properly train its deputies as to the proper role of employees in private disputes such as eviction." [1] ¶¶ 29, 30. Aside from these

"boilerplate recitations in the complaint," Plaintiffs "provide virtually no allegations to support the existence" of this widespread practice. *Milchtein*, 2022 WL 3040897, at *8; *see also Dix*, 2018 WL 3922199, at *9 ("Plaintiff fails to plausibly allege that the defendants' actions were anything more than isolated incidents, which are insufficient to support his claim based on the theory of a *de facto* policy."). The Court cannot infer from such threadbare allegations that a widespread practice or a failure to train, in fact, existed. As such, this Court dismisses the Village from Count I.

### B. IBC's Motion to Dismiss

IBC moves to dismiss Count I on the basis that it is not a state actor subject to Section 1983 liability. [12] at 4–6.

To state a claim under § 1983, Plaintiffs must allege that an alleged constitutional "deprivation was committed by a person acting under color of state law." *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). It is undisputed that IBC is a private actor, not a state or municipal employee or municipality, so it "acts under color of state law" in only a few limited circumstances. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Relevant here, Plaintiffs argue that IBC acted under color of state law because it acted "in concert" with state actors—namely, the Village and its inspectors. [19] at 4. Plaintiffs correctly observe that a private citizen "can act under color of law if there is 'evidence of a *concerted effort* between a state actor and that individual.'" *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)). But "mere allegations of joint action or a

11

conspiracy . . . are not sufficient to survive a motion to dismiss." *Id.* (quoting *Fries*, 146 F.3d at 457). Rather, Plaintiffs must plausibly allege that: (1) a state official and IBC reached an understanding to deprive Plaintiffs of their constitutional rights; and (2) IBC willfully participated in joint activity with the State or its agents. *Id.*; *see also L.P.*, 852 F.3d at 696.

Plaintiffs' pleading is deficient as to both elements. They have pled neither an agreement between IBC and the Village or its inspectors to harm Plaintiffs nor willful participation in joint activity. The complaint alleges a sequence of events as follows: IBC shut off water in the building in October 2019; at some point in December 2019, IBC sealed the building; then, on December 24, 2019, Sabatino and Capra sealed the building. [1] ¶¶ 14, 16, 17. The complaint suggests that IBC acted alone, and that Sabatino and Capra acted alone. The complaint is devoid of any allegation that IBC interacted with Sabatino and Capra (or anyone else from the Village), much less that they formed an agreement to deprive Plaintiffs of their constitutional rights and thereafter engaged in joint activity to harm Plaintiffs. Therefore, this Court dismisses IBC from the § 1983 claim in Count I.

IBC also requests that this Court relinquish supplemental jurisdiction over Plaintiffs' claim against IBC in Count II based on the Illinois Forcible Entry and Detainer Act if it dismisses the federal Section 1983 claim against IBC in Count I. [21] at 5. When federal claims drop out a case, the law presumes that the district court will relinquish jurisdiction over state-law claims. *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). In this case, however, the Fourth

12

Amendment § 1983 claim remains pending against Sabatino and Capra, so the "the presumption to relinquish supplemental jurisdiction has not been triggered." *Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *11 (N.D. Ill. Mar. 24, 2020); *see Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (holding that the district court properly retained supplemental jurisdiction over state claims against a school district where federal claims against its co-defendant remained). This Court therefore retains jurisdiction over Count II.

## IV. Conclusion

For the reasons explained above, this Court grants in part and denies in part IBC's motion to dismiss [12], and grants in part and denies in part the Melrose Park Defendants' motion to dismiss [13]. As a result of the Court's rulings, the Village of Melrose Park is dismissed from this case, Count I is dismissed against IBC, and Count I is dismissed to the extent Plaintiffs allege a Fourteenth Amendment due process claim. Plaintiffs' Fourth Amendment claims against Capra and Sabatino in Count I and their state-law claim in Count II against IBC will proceed.

E N T E R:

*Mary M Rowland*

Dated: August 11, 2022

MARY M. ROWLAND
United States District Judge